UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

EARL BARLOW, JR.,

    Plaintiff,

v.    Case No. 12-2058

OFFICER RILEY,

    Defendant.

## ORDER

Plaintiff Earl Barlow, Jr. brings an excessive force claim under 42 U.S.C. § 1983 against Defendant Nicholas Riley, a correctional officer at Jerome Combs Detention Center (JCDC) in Kankakee, Illinois, alleging that Defendant, during an incident in which inmates at JCDC refused to lock up after receiving their meal trays, kneed Plaintiff hard in the back while cuffing him, causing Plaintiff to suffer intense lower back pain. Before the Court are various Motions in Limine, filed in anticipation of the trial set to begin May 28, 2013. For the reasons explained below, Defendant's Motion in Limine #7 Seeking to Introduce Evidence of Plaintiff's Felony Convictions **(#64)** is **GRANTED IN PART and DENIED IN PART**; and Plaintiff's Motions in Limine **(#65)** are **GRANTED IN PART and DENIED IN PART**.

### I. Discussion

In his Motions in Limine (#65), Plaintiff seeks to bar the following evidence: his prior felony convictions, as well as the felony convictions of his witnesses Elton Pendleton and Aaron Thomas; the cause of a prior injury to Plaintiff's right shoulder; discipline Plaintiff received at Jerome Combs Detention Center (JCDC) for incidents unrelated to this case; the number of times Plaintiff has been housed at JCDC; and Plaintiff's sale of his prescription pain medication.

### A. Felony Convictions

The Court addresses together Defendant's Motion in Limine (#7) Seeking to Introduce Evidence of Plaintiff's Felony Convictions (#64) and Plaintiff's arguments that the Court should

1

exclude evidence of his own felony convictions and those of his witnesses. Plaintiff has been convicted of five felonies: in 1993, second degree murder; in 1996, aggravated battery of an individual over sixty years old;[1] in 2004, aggravated battery; in 2007, aggravated battery; and in 2012, violation of an order of protection. Plaintiff's witness Pendleton was convicted of drug-related felonies in 1990, 1997, and 2008; criminal sexual assault in 2000; and violating the sexual offender registry in 2005; and Thomas was convicted of residential burglary in 2006 and attempted burglary in 2012.[2]

Defendant argues that the felony convictions of Plaintiff and his witnesses constitute proper impeachment evidence under Federal Rule of Evidence 609, and that the standard application of Rule 609 in the Seventh Circuit is to admit the name, date, and disposition of the felony conviction. Plaintiff counters that convictions admissible under Rule 609 are, nevertheless, subject to the balancing test of Rule 403. Plaintiff urges the Court to bar the felony convictions of Plaintiff and his witnesses as unduly prejudicial and likely to inflame the passions of the jury.

Federal Rule of Evidence 609 instructs courts in civil cases to admit, subject to Rule 403, a witness's prior felony convictions as impeachment evidence. *See* FED. R. EVID. 609(a)(1)(A). The Seventh Circuit has indicated that, generally, trial courts should admit "the particular felony charged, the date, and the disposition of a prior conviction for impeachment purposes." *See, e.g., United States v. Smith*, 454 F.3d 707, 716 (7th Cir. 2006). Nevertheless, trial courts enjoy broad discretion in determining the admissibility of such evidence, and the Seventh Circuit has approved the practice of "sanitizing" a prior felony offense, in which the trial court, where the nature of the felony is particularly prejudicial, permits the jury to hear only that a witness has been convicted of a felony. *See, e.g., Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009); *see also Stanbridge v. Mitchell*, No. 10-CV-3008, 2012 WL 1853483, at *2 (C.D. Ill.

---

[1] Plaintiff does not indicate when he was released from confinement for his 1993 and 1996 felonies. Therefore, it is unclear whether the limit on using felonies older than ten years, articulated in Rule 609(b), applies. Ultimately, the question of whether these earlier felonies are admissible is moot, because the Court holds that the jury may hear only that Plaintiff has prior felony convictions, and may not hear the number or nature of his convictions.

[2] Plaintiff's motion also refers to Byron Moore as a potential witness, but Plaintiff does not list him as a witness in the final pretrial order. Therefore, the Court does not consider the admissibility of his prior felony convictions.

May 21, 2012) (barring evidence of nature of crime); *Anderson v. City of Chicago*, No. 09 C 2311, 2010 WL 4928875, at *3 (N.D. Ill. Nov. 30, 2010) (same).

Here, Plaintiff fails to establish that any unfair prejudice would arise from admitting the nature, date, and disposition of the prior felonies of Plaintiff's witnesses. Plaintiff argues that the nature of the witnesses' crimes "would simply inflame the passions of the jury against the Plaintiff and would not legitimately reflect on their capacity for truthfulness." (#65-1.) However, it is not for this Court to question the wisdom of Rule 609, which makes clear that prior felony convictions *are* relevant to a witness's character for truthfulness. Accordingly, for witnesses Pendleton and Thomas, defense counsel may introduce evidence of the nature, date, and disposition of their felonies. It is not clear when Pendleton was released from confinement for his felony convictions, but it appears likely that he was released from confinement for some of his earlier offenses more than ten years ago. Therefore, under Rule 609(b), the Court holds that Defendant may refer only to those felonies for which Pendleton was convicted or released from confinement in the last ten years.

Nevertheless, the Court agrees with Plaintiff that the danger of unfair prejudice arising from the nature of his crimes—all violent, aggravated offenses—substantially outweighs any probative value of the nature of his crimes for Plaintiff's credibility. There is a substantial risk that the jury could assume that, in conformity with Plaintiff's history of violent crime, Plaintiff behaved aggressively in the incident at JCDC at issue in this case, or simply decide that, even if Defendant did use excessive force, Plaintiff does not deserve relief because he is a recidivist violent offender. Therefore, the only evidence Defendant may introduce regarding Plaintiff's criminal history is that Plaintiff has prior felony convictions. The parties may wish to provide a stipulation to this effect.

### B. Cause of the Prior Injury to Plaintiff's Shoulder

The parties agree that Plaintiff's previous injury to his right shoulder is relevant to this case, as Plaintiff maintains his injury affected how he reacted when Defendant attempted to cuff him. However, the parties disagree as to whether the cause of Plaintiff's injury is relevant. Plaintiff injured himself in 1990 when he "was drinking and fell off an overpass." Plaintiff's

3

Dep. at 108:8 (#70-1).  Plaintiff also testified in his deposition, however, that he claimed he jumped off the overpass in a suicide attempt in order to obtain disability benefits.  *Id.* at 108:13-20.

Plaintiff contends that the cause of his injury is irrelevant, but Defendant maintains that Plaintiff's statements regarding his fall from the overpass are relevant to Plaintiff's credibility.  Defendant argues that he should be permitted to cross-examine Plaintiff about his misrepresentation regarding the fall from the overpass, as a particular instance of conduct reflecting Plaintiff's character for truthfulness under Rule 608(b).  The Court agrees with Defendant that Plaintiff's admission that he lied about his fall from the overpass in order to obtain disability benefits is probative of untruthfulness.  *See* FED. R. EVID. 608(b); *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 627 (7th Cir. 2003).  Thus, Defendant may question Plaintiff about this misrepresentation on cross-examination, but, consistent with Rule 608(b), Defendant may not introduce any extrinsic evidence in support.

### C.  Disciplinary Action Against Plaintiff Unrelated to This Case

Defendant agrees with Plaintiff that any disciplinary action taken against Plaintiff at JCDC, for incidents unrelated to this case, should not be admitted.  Therefore, the Court bars such evidence.

### D.  Plaintiff's Prior Detentions at JCDC

Plaintiff seeks to exclude as irrelevant evidence that he has been detained more than thirty times at JCDC.  Defendant responds that he should be permitted to introduce evidence of the number of times Plaintiff has been detained at JCDC in order to show that Plaintiff was familiar with the lock up procedures at JCDC.  Defendant argues that he anticipates that Plaintiff will "testif[y] that he failed to lock up because he did not know the procedure for meal time in Max A or because he heard conflicting orders from the officers," and that, in doing so, Plaintiff will "open[] the door to evidence regarding his prior incarcerations."  (#70, p. 7.)

The Court finds that the probative value of the number of times Plaintiff has been incarcerated at JCDC is substantially outweighed by the prejudicial effect of this evidence.  It

appears that the meal time at issue here was anything but ordinary, because the inmates refused to return to their cells and lock up, prompting a response from JCDC correctional officers. Therefore, Plaintiff's purported knowledge of how meal time was supposed to function at JCDC, given his numerous previous detentions there, has little probative value in determining whether Plaintiff should have known how to react during the atypical mealtime at issue in this case. Moreover, the prejudicial effect of this evidence is high, because the number of times Plaintiff has passed through JCDC would paint him as a recidivist criminal. Therefore, the Court excludes evidence of Plaintiff's prior detentions at JCDC under Rule 403.

### E.  Plaintiff's Sale of his Back Pain Medication

Lastly, Plaintiff also moves to bar evidence that, prior to the events giving rise to this case, Plaintiff sold medication prescribed for his back pain. Plaintiff reported in his deposition that, prior to the incident with Defendant, he complained of back pain at Hines VA, received prescription pain medication, even though he "can deal with [his back pain] without the medication," and then sold the medication. Plaintiff's Dep. at 193:3-4. He also testified that he arranged appointments at Hines VA, even when he did not need them, so that he could receive reimbursement from the government for his travel because he "needed some cash." *Id.* at 192:20-21.

Defendant argues that evidence that Plaintiff previously sold pills prescribed for his back pain is admissible under Rule 404(b) as substantive evidence of motive and plan. Defendant asserts that "Plaintiff is expected to testify that his back pain was so severe [following the incident with Defendant] that the over-the-counter medication provided to him by medical personnel at the jail did not help and that he continued to request stronger medication." (#70, p. 8.) Defendant argues, therefore, that evidence that Plaintiff previously sold pills prescribed for his back pain is admissible to show that Plaintiff's motive and plan, in reporting that his pain following the incident with Defendant was severe enough to require prescription medication, was to obtain medication and sell it. Defendant also contends that Plaintiff's sale of prescription medications and his unnecessary trips to the VA are admissible as impeachment evidence under Rule 608(b), as instances of conduct probative of his character for untruthfulness.

5

The Court finds that Plaintiff's prior sale of his medications is not properly admissible as evidence of motive and plan under Rule 404(b) because this evidence appears marginally relevant, at best, and grounded in nothing more than speculation. Defendant does not suggest that Plaintiff sold the medication he received to treat the back injury Defendant allegedly caused him; therefore, it hardly seems relevant whether Plaintiff had a motive or intent to do so. Moreover, Defendant's argument boils down to speculation that Plaintiff, based on his past behavior, may have wanted to sell the medication he received to treat the back injury at issue in this case, even though there is no evidence that Plaintiff actually did so. Theories of motive and plan based on speculation are not properly admitted under Rule 404(b). *See, e.g., United States v. Algood*, 19 F. App'x 419, 426 (7th Cir. 2001).

The Court agrees with Defendant that Plaintiff's testimony that he sought prescription medication he did not need, only to sell it later, and arranged appointments he did not need in order to receive government reimbursements, is probative of his character for untruthfulness. Accordingly, pursuant to Rule 608(b), Defendant may cross-examine Plaintiff on these incidents but may not introduce extrinsic evidence in support.

## II. Conclusion

For these reasons, Defendant's Motion in Limine #7 Seeking to Introduce Evidence of Plaintiff's Felony Convictions **(#64)** is **GRANTED IN PART and DENIED IN PART**. Plaintiff's Motions in Limine **(#65)** are **GRANTED IN PART and DENIED IN PART**. Defendant may refer only to the fact that Plaintiff has prior felony convictions, but may introduce evidence of the nature, date, and disposition of the felonies of Plaintiff's witnesses. Defendant may cross-examine Plaintiff about his statements regarding his fall from the overpass in the early 1990s, and about his sale of his prescription medication and his unnecessary trips to Hines VA. However, Defendant may not introduce Plaintiff's sale of his medication as substantive evidence under 404(b), nor may Defendant refer to the number of times Plaintiff has been incarcerated at JCDC. Per the parties' agreement, evidence of disciplinary action taken against Plaintiff at JCDC, for incidents unrelated to this case, is barred.

ENTERED this 24th day of May, 2013.

                                                          s/DAVID G. BERNTHAL  
                                        UNITED STATES MAGISTRATE JUDGE